Okay, this is 4-13-0725, People of the State of Illinois v. Robert Meredith, Attorney Brian Reina? Yes, Reina. Is that how you pronounce it? Yes, it is. It's here on behalf of the appellant, and Attorney Alston Brooks is here on behalf of the appellee. Mr. Reina, are you ready to proceed? Yes, Your Honor. Alright, you may do so. Good afternoon, Your Honors. Good afternoon. Counsel, may it please the Court. My name is Brian Reina. I'm from the Office of the State Appellate Defender on behalf of the appellant, Robert Meredith. I raised eight issues in the opening briefs, and today I'd like to focus, with your permission, on Issues 1 and 3, those being that the State failed to prove that Meredith was intoxicated while driving, and that the prosecutor's comments during opening statements and closing arguments diminished the reasonable doubt standard. I'd, of course, be happy to take questions on any of the other issues. And I did find out just before the argument that the State had filed an additional document. I had not received that or had time to review it. I believe it relates to the sentencing credit issue. And I would just request some time to file a response to that motion. I believe it was filed while I was en route here. Is it in relation to the booking? Right, exactly. And Counsel, if you can correct me, I believe it's a certification of the booking report. I think we've had that for a while. Okay. Would that be right, Mr. Groves? Okay, right. I haven't – I mean, Counsel showed it to me before, but I would just request an opportunity to review the document and respond to it. Okay. But regarding Issue 1, the State failed to prove any fact at trial that would allow reasonable inference that Robert Meredith was intoxicated while he was driving. The State merely proved that he was intoxicated and that he was driving, but it failed to link those two facts together. The undisputed evidence was that a police officer saw Meredith arrive in a car. She saw him driving. She saw him park. And she admitted at trial she had no reason to conduct a traffic stop and no reason to believe he was intoxicated. She also saw him exit the car, and based on his behavior after exiting the car, she had no reason to believe he was intoxicated. The officer then lost track of Meredith for about a half hour as he walked toward a retention pond. The officer drove through the parking lots looking for Mr. Meredith and didn't find him in any of the lots. When she eventually did find him, he was on the phone and told the officers he was waiting for a ride. The officer instructed him to go back to his car. She called a DUI officer. Mr. Meredith told the DUI officer also that he was waiting for a ride that he had called a taxi cab. And indeed, a taxi cab arrived during his arrest. At trial, Mr. Meredith admitted he was intoxicated, but said he had been drinking at this retention pond after arriving. And the state's evidence is completely consistent with his testimony that he drank at the retention pond after parking. There's a significant gap of time that the state simply failed to account for. The state argues two facts that allegedly allow for an inference of intoxication while driving. The first being the initial officer's observation and testimony that Mr. Meredith was speeding when he was driving through the parking lot. And it would simply, based on that testimony, is now rational to conclude he was intoxicated while driving. The officer admitted that during her testimony when she had said she had no reason to believe he was intoxicated. Did they give him a PBT at the scene? At the scene, yes, after the half hour where he disappeared. Right, and what did that show? Well, that showed he was intoxicated. He told the officer right away that, I'm drunk, I'm not going to get in a car and drive right now. What were the numbers? The preliminary breath test was a .18, I believe. Do you think, I mean, could the jury, this was a jury case. It was a jury trial. Could a collective group of 12 people, using their common sense and everyday experience, be able to determine that a person wouldn't get to .18 in 30 minutes? No, Your Honor, there was no scientific evidence saying that that would not be possible. So your position is you'd have to have an expert testify? Absolutely. I mean, if the state has no evidence of what happened during this time, the defense counsel argued at trial that that wasn't enough time, or excuse me, that that was enough time for Mr. Meredith to drink this rum and become drunk, and they put on no evidence to, they didn't argue, dispute that by argument or by evidence. And it was a half pint to a pint of rum is a significant amount of alcohol. From a layperson's perspective, it seems perfectly reasonable that he, having this time to drink it, it would appear on a blood alcohol test or a breath test. But the officer who observed him driving and arriving didn't observe any erratic driving, no swerving, nothing that would suggest intoxicated driving. She said he was speeding. I mean, the United States Supreme Court has said speeding doesn't necessarily allow for inference of intoxicated driving. And the officer that night obviously didn't feel like there was any need to approach Mr. Meredith or conduct a traffic stop. The other fact the state points to is Mr. Meredith's initial statement to Officer Jones, who was the DUI officer who arrived at the scene. Initially, Mr. Meredith lied to Mr. Jones, just stating that a friend had dropped him off and that he had had beer earlier in the day. But at trial, he admitted that this was a lie. And he explained why he lied. He was trespassing at this pond and didn't want to tell the officers he was there. There's no evidence corroborating. If the state wants to use that as an admission, there has to be evidence corroborating that, evidence corroborating intoxicated driving. If the only evidence of intoxicated driving is his alleged admission. In House v. the Illinois Supreme Court. He was intoxicated. Excuse me? He also was intoxicated. Not while driving, though. I mean, the corpus delicti of the offense and the element of the offense as well is while driving. What I'm saying is he tells the officer I had something less than 12 beers, right? Well, yes, that statement is very misleading. And he says I'm intoxicated. Yes. And so why isn't that the fact of intoxication corroborative of his statement that he drank 12 beers or something less than 12 beers? Right. He never said he drank 12 beers. But it's not because the officer didn't approach him when he got out of the car. The evidence when he got out of the car does not indicate intoxication in any way. So, I mean, the fact he made a statement, if he had gotten out of his car and stumbled or swerving while he was in the car, then there's some corroboration. Okay, there's a fact here to connect to this alleged admission. But there's nothing like that here. The officer didn't approach Mr. Meredith when he got out of his car. The theory is the defendant got out of the car and took rum with him, a bottle of rum, over to the retention pond where he drank it? Yes, Your Honor. The officer who watched that didn't see him carrying anything, did she? Well, she didn't see him carrying anything, but she later saw him on a cell phone, which she didn't see when he got out of the car either. A cell phone is like a bottle of rum? In that it's an object that he, you know, that she didn't see that he could have had. Cell phones fit in pockets. Do bottles of rum fit in your pocket? Well, this was anywhere between a half pint and a pint. I mean, certainly a smaller bottle could fit in a pocket or a jacket pocket. Well, if he had been in the car when he got out, do you think he had it in his pocket as he sat in his car driving? Based on the facts, I think he had it in his pocket. Just as Spock says, our common experience is in life. Sure. Would a jury think that the guy is driving along with a bottle in his pocket? Or is likely to have the bottle somewhere in the car? And if it's somewhere in the car and then he stops the car, opens the door, gets out, now he reaches for the bottle and gets out of the car with it in his hand and the cop sees it. Wouldn't that be the sequence of events that we normally expect? Well, there are obviously no. It's not. There are different ways this could have happened, and that's just pure speculation. The facts of this case are identical to those of Wallace, Wells, and Flores. Well, I haven't thought about those cases. I want to go back to this case. Sure. Why wouldn't that be what a reasonable jury would expect? Because it's speculation. I mean, it's pure speculation that he would have had a bottle in his hand. No, he said he had the bottle. He said he had the bottle with him when he got out of the car. You're claiming apparently he had it in a pocket. That's why the officer didn't see it. Why should the jury think that likely? Because there's nothing to suggest it's not true.  I have an experience that you'd be driving in a car with a bottle in your pocket. But if you're going to a pond to drink a bottle of rum, you'd likely put it in your pocket to take it to the pond. I mean, to say that it's more likely that he would have not had it in his pocket or not driven than it is that he would have had it in his pocket is just guessing. I mean, the fact is he could have had an object on him, such as a bottle of rum, that the officer didn't see that was still there. And the fact that she did not see his cell phone but then later did see him with it shows that. It shows that he could have had something in his pocket. Let's go back to the driving.  It was, from the officer's perspective, the tire squealing and the manner in which she said the defendant drove in a particular dealership that prompted her attention. Would that be correct? It's her testimony. Her testimony, right. Was that what initially attracted her? So, whether she suspects that that's DUI or not, she decides to monitor his leaving the parking lot wherever he was going to drive to. Now, at one juncture, he says, I was at a friend's house. We were partying. I had less than a dozen beers over a period of time, and then I got a ride back to the dealership. Why can't a jury infer from that that whatever the number of beers he had, and I assume if he had one, he wouldn't have said less than a dozen. The officer actually put that number out there. What number? Twelve. He asked Mr. Meredith how many beers he had, and he said, you know, I'm not sure. He said, well, was it less than twelve? Yeah, less than a dozen. Sure. Well, that's an odd way to express one or two beers. That's an odd way to express it. So, we have an admission, even though the initial number was put out there by the officer. Wouldn't the jury be entitled to consider that and believe that he did take a bottle of rum, but that that advanced his intoxication? Not with this gap of time here, Your Honor, because he denied at trial, Mr. Meredith denied that that statement is true. He said that that was a lie, and actually the state argued that he was lying. His initial statement to Officer Jones, that he was dropped off, and that he was at his friend's, and the state argued that he was lying. So, they're kind of asking. But that's like, well, the lying was part of that. I didn't want to talk about being on private property. Well, sure. Did he say, I lied about partying in the afternoon? He said the whole statement was a lie. The whole statement. And then he eventually told the officer the truth. He said, I was drinking at the pond. Now, I'm drunk, I was drinking at the pond. I called the taxi cab, and the taxi cab showed up. Well, if the jury disbelieved his testimony, could they have believed that his earlier admission contributed to his state of intoxication? Not without corroborating evidence of the statement. And the facts of Flores are basically identical to this, where an officer said, you know, this. Well, first of all, an officer saw. What is this about not without corroborating evidence? You've said this now twice. I want to make sure I understand what your point is. We're the only evidence of intoxication. You're saying that this is equivalent to the confession case, where if you have a confession of a person, it's not admissible and not adequate unless there is corroboration showing that the confession, in fact, happened, the offense happened? If the only evidence of intoxicated driving is an officer's testimony that there was this admission, there must be corroborating evidence. And the same thing happened in Flores. What case stands for this proposition? Flores. And specifically what happened in that case is the officer saw a wrecked car that was unoccupied and then saw the defendant walking toward the car. According to the officer at trial, the officer testified that he had asked the defendant, did you drink after this accident? And he said no. But at trial, the defendant said that he was never asked that question. The appellate court found, ultimately, that because that statement was completely uncorroborated, the officer's testimony to this alleged admission was completely uncorroborated, that that did not constitute sufficient evidence. Is that a decision which makes sense?  Is that a decision which makes sense? Absolutely, Your Honor. We're under no obligation to follow it. It's a First District case. Right. The concept of you can't accept an unverified or uncorroborated confession is one which exists so that you don't have people walking in and saying, I kidnapped the Lindbergh baby, I'm the one who did it, or other famous crimes, without some evidence beyond just what he said. But it's a limited rule, and it's one which hardly applies to a case where you seem to be saying we have to have corroboration for all aspects of the criminal case. That's not my understanding of how this rule works. Just for your sense, the portion of the statement that the State wants to use or is characterizing as an admission is that he had been drinking alcohol before he arrived. And no one can consider that without some other corroboration, someone coming forth and saying, yeah, that's right? That's correct. Under Flores, that's correct. The good thing is if that's what Flores stands for, then we can reject it as making no sense. Well, Your Honor, also the Supreme Court, the Illinois Supreme Court, in House v. found that a reasonable inference must be based on three things. The inference of burglary from recently stolen property. Yes. Highly applicable under these circumstances, where it's the only evidence, by the way. The general rule applies to cases other than burglary, and it requires corroborating evidence of an alleged admission. Well, so while the driving is not per se evidence of intoxication, the squealing of tires and the driving and the darting around, going where he went, his behavior after that, absenting himself from the car, later deciding himself that maybe he shouldn't be driving his car, why doesn't all that connect back to an admission that he made about partying and drinking, but he had less than a dozen beers, simply because he later says, well, that was all a lie because I didn't want people to think I'd been drinking rum on private property. I shouldn't have been down at that detention base. Why does that erase that? His credibility is at issue. Well, the State agrees that the initial statement, I believe, was a lie. Right. Well, because under these cases it's not more likely than not, under House v. One of the factors is that the inferred fact must be more likely to flow than not from the proven fact. And here it's not more likely than not that he lied about drinking to  unreasonably infer once they realized he'd been driving, that he had been drinking and driving, than it is that he said that to conceal the fact of actual intoxicated driving. Excuse me. I see the light is going off. I'd just like to say that this was a very weak case, and that in closing arguments the State admitted there are pieces missing from its evidence. And even if you buy that the State barely proved this case, the prosecutor's statements in opening and closing arguments warrant a new trial here where they diminish the reasonable doubt standard. What about the defense argument that there should be some doubt in your minds whether or not my client was intoxicated at the time he drove? Why is it not proper for the prosecutor to point out that's not the standard? It's not the summed up whether there was a reasonable doubt. Isn't that a correct statement? The State could argue that its evidence met the reasonable doubt standard, but it cannot define the standard by saying that it's not summed up. My question is why was it improper, given that argument by the defense counsel, for the prosecutor or rebuttal to say that's not the standard summed up, the standard is reasonable doubt? It was improper because defense counsel's argument wasn't improper, and the first attempt to define the reasonable doubt standard was made by the prosecutor. You mean the idea that arguing that there should be some doubt, that's not the standard? No, the State is not objecting to it now. The defense attorney is asking the jury to find a doubt and actually posited the question, is this reasonable? The defense attorney's job is to poke holes in the State's case. The State has the burden of proof. There should be some doubt in your mind is the argument that the defense counsel made. That's not the standard, though, is it, to find an acquittal? Isn't it that there has to be a reasonable doubt? But he didn't say it was the standard, Your Honor. He said there should be some doubt in your mind. Okay, but that's his argument. That's his claim. There should be some doubt in your mind as to whether or not my client was intoxicated. Why is it improper for the State's attorney to say that isn't the standard summed up? You have to find that there was a reasonable doubt. Because they improperly attempted to define the reasonable doubt standard. That's why. And the initial statement by the prosecutor. It was actually the final statement the prosecutor made to the jury. So right at the end, after admitting, you know, we don't have much evidence here. Also, the standard isn't very high. It's not summed out. It's not beyond all doubt. It's not wild speculation. It's not strange possibility. You know, those are extremely prejudicial comments based on the evidence in this case. And where there's clear error and the evidence is close, the case warrants a new trial under the plain error doctrine. All right, counsel. Thank you. You'll have more time on rebuttal. Thank you, your honors. Ms. Brooks. Good afternoon. Allison Paige Brooks appearing on behalf of the people. May it please the court and counsel. First of all, I would like to address the issue that counsel brought up first, which was the state's motion to supplement the record. I filed that on Monday. I did call the counsel and let him know that I would be filing that. And, of course, he has not really addressed sentence credit in this argument. But essentially the state's position is that the defendant was let out of jail the morning of June 17th, received one day of credit for that day, was given a notice to appear. And that's the reason why bond was not set in the misdemeanor case. And on August 3rd, when the felony charges were filed, then the misdemeanor case was dismissed. And only then, when he appears under the felony charges, he granted a recognizance bond. So the defendant's argument that he's entitled to all that time and credit between his initial arrest and the granting of the recognizance bond is not well taken. Counsel, let me ask this so you don't spend your time on this point. You conceded that there shouldn't be two convictions for DUI? Right. And the remedy would be remand for the trial court to determine. Assuming we agree with you and we're going to send it back for that purpose, why shouldn't we send it back and say, by the way, trial judge, there's all this question about time served. You figure it out. That's certainly well within this court's discretion to do so if this court determines it's necessary. But the state's motions to take judicial notice should decide the matter conclusively and not require remand, although if this court wants to include that as part of the remand, the state does not object. So with respect to the issue of reasonable doubt, the standard is light and most favorable to the prosecution. And there is, in fact, evidence of the defendant having consumed alcohol prior to him having been seen driving by Officer Etchell, and that's his admissions to Jones that he had been drinking beer, he quantified as less than a dozen, and he also said that he had been partying at a house. So the jury can infer that there's no houses with parties occurring at the middle of the morning on this stretch where there's all these car dealerships. So when Etchell sees him driving and park the car and get out and walk away and disappear behind the dealership at some point, and then later finds him standing behind the Honda dealership calling a cab on his cell phone, the jury can reasonably infer that he was not at the house party at that time drinking beers. He was, in fact, just hiding out from police because he drove essentially right by Etchell who was on the south side of the road. He comes from Ford on the north side of the road and then parks on the access road. So he would have seen, and Etchell opined that the defendant would have seen him, that he would have seen her, and that she was in a fully marked squad car. Although she was working off-duty as a form of security for these dealerships, she was still in a fully marked police car. So he would have seen that and he would have realized he has to stop driving or he's going to get arrested for DUI because he knows how drunk he is. It's these admissions to Jones about him having drunk beer, which is the distinction. Now he says later in his trial testimony he drank a pint of rum, which is different from beer. So there is the conflict in the evidence, and the defense argument that Flores, Wells, and Wallace are, quote, identical to this case, fails to take into account the critical distinction here is that there is a conflict in the evidence. There is the defendant's initial admissions, which can be believed in whole or in part. And the part that the defendant parked his car earlier in the day, went drinking, and then came back and was let off by his buddies, the part of him parking earlier in the day and being dropped off by his buddies can be disbelieved because the jury heard Etchell testify that she  was drinking. So that part can be disbelieved, and the part about the defendant admitting prior consumption of alcohol can be believed and accepted as proof beyond a reasonable doubt and distinguishes those cases in which there was no conflict in the evidence with respect to whether the defendant drank before he was allegedly driving. So in this case, there's also plenty of circumstantial evidence that the defendant parked on an access road, which is three dealerships away from this pond. His wife denied that they had any argument, claimed that this girl Felicity had been away for more than a year or two. So his whole reason for having taken a pint of rum after an argument on this special day, six months after this girl Felicity leaves the house so he can start visiting her, all of that is disputed and there's conflicts which can be resolved in the light most favorable to the prosecution. So essentially when the defendant makes an incredible explanation for his incriminating conduct, the jury can take that into account in deciding whether the state has proved this case beyond a reasonable doubt. So you're arguing that his lying is probative? Yes, Your Honor. The sheer credibility of his explanation for his actions is probative of his guilt. Yes, Your Honor. So also as Justice Seidman pointed out, the evidence that Edgell did not see him holding anything when he got out of the car is also conflicts with his testimony that he carried the rum to the detention fund. What about the argument Mr. Reina made, is Reina pronounced correctly? Reina. Reina, excuse me, sir. Mr. Reina made with regard to the need to corroborate some of these claims beyond what he said himself. Yes, Your Honor. I understand this to be a form of the corroboration rule under the corpus crime has to be corroborated, at least circumstantially. And here, there's plenty of corroboration in the form of Edgell seeing the defendant driving. So the element of him driving is established by other evidence apart from his admissions. And also, the defendant, after he's detained, fails to field sobriety tests. So again, that corroborates the fact that he was intoxicated. So the connection of those two does provide sufficient corroboration to meet the corpus electi rule. So his admissions can be considered as evidence of proof. So it's not solely a conviction based on his word alone. So also, as we move on to the next issue with respect to reasonable doubt, this wasn't properly defined. I want to ask you about the arguments concerning reasonable doubt. I already asked Mr. Reina about the rebuttal. What about the prosecutor's opening remarks? That's what I was getting to, Your Honor. The fact that if it was not objected to and it's not preserved, then it has to be reviewed for plain error. And if it is considered to be a clear or obvious error, the prosecution is not supposed to stand up an opening statement and try to define reasonable doubt for the jury. But the defendant still has the burden of persuasion to show that this is the type of case in which his forfeiture should be excused. And because the evidence is not closely balanced, it's a situation where this court should reject his request for plain error review. And the fact that this was repeated in rebuttal argument, but it did follow a defense argument which was improper, which advocated for the jury to acquit if it had some doubt. And so therefore, the prosecution presents this in rebuttal argument again. So for that reason, even improper arguments by a prosecutor will not be reversed on appeal if they are provoked by the defense. So in the case the State cites was one in which the prosecutor provided a personal opinion of the defendant's guilt, but that was done in response to a defense argument in which the defense attorney claimed the prosecutor didn't even believe its own case. So the prosecutor then provided that personal opinion in response, but that would be ordinarily improper, but because it was provoked and invited, that was not considered reversible error. With respect to the next issue, which is the Section 111-3C the State would like to address, because it seems there is some confusion in the defendant's opening brief with respect to how that statute applies to the requirements of charging the State's intention to seek an enhanced sentence. And this is a case where the defense crime was a Class X sentence for all purposes. And the State, the defense before sentencing makes the objection the State failed to amend its charge. However, that comes post-trial, and when a charge, when a challenge to a deficiency in the charging instrument is raised for the first time after trial, there has to be some form of prejudice to the preparation of defense in order for the defendant to obtain any relief. So even if the Section 111-3C, which requires the charge, shall also state the intention to seek an enhanced sentence, if that was not complied with because the State provided a separate notice and didn't include the language enhancing the crimes into a Class X felony inside the charge itself, if that is accepted by this court, if that position is accepted by this court, then the defense still was not prejudiced in the preparation of its defense because it had actual notice, and the trial court recognized that the defendant had actual notice that he was being prosecuted and was going to be sentenced as a Class X offender. He had that notice before trial. So even if this court were to consider providing a remedy, the State's position would be that the only remedy available would be a new trial, unlike what happened in the Whalum case, in which there was a remand for resentencing on a lower class crime. And the State's position is that this court should decline to provide that similar remedy in this case because it would result in the imposition of a legal sentence and avoid judgment because the defendant was, in fact, proved to have five prior DUI violations, and this was his sixth DUI violation. The only sentence that is legal under Section 11-501D2E for a sixth or subsequent violation is a Class X felony. So if this court were to consider remanding for resentencing on a Class II felony, for example, that would result in avoid judgment for a defendant who is There's no question that the charge should have included the allegation that this was a sixth or subsequent and he was subject to Class X sentencing. The way it should have been done, Your Honor, is yes. It should have stated that the charge stated that it was his third or subsequent, which would ordinarily be either a Class II, Class I, or Class X felony, depending on which third or subsequent it was. But that should have actually specified, had been amended to specify it, that it was not. So if this court is considering a remedy, the State's position is no remedy should be granted because he wasn't prejudiced in preparation for defense. And if a remedy has to be granted, it should be a new trial rather than resentencing to a lower class of felony. With respect to double enhancement, there is no double enhancement. It is a single enhancement. There is a single enhancement straight from a Class A to a Class X, and I know that sounds unusual, but that's not the only crime. I think it was aggravated battery to a child or something was a similar type of crime where it went straight from a Class A to a Class X. It can be a single enhancement, even if it is a double enhancement. The legislative intent is very clear and obvious that the legislature intended to punish a sixth DUI violation as a Class X felony. So even if there was somehow a technical form of double enhancement lurking inside the statute, the legislative intent controls, despite the existence or possible existence of a double enhancement. So for these reasons, the State requests this Court to affirm the defendant's conviction and sentence, and I'm willing to entertain any other questions. Thank you. Thank you. Mr. Rayna, do you have a rebuttal? Just briefly, Your Honor. Before you start, I want to ask you a very practical question. Yes. It seems to me like your client would have superior knowledge about whether he was in jail for these 60 days we're talking about. Right. Did you ever ask him? Yes, I've talked to my client. I mean, I'm raising the argument in good faith. Well. Those are privileged communications, obviously. I don't know if I can get into our discussion, but I wouldn't raise Well, why are we wasting time is the point I'm getting at. Well, because I have reason to believe that he wasn't in custody. He was or was not? Excuse me, he was in custody, yes. Well, my question to you is, did you check with him? Yes, I spoke with him about this. And the next step would be to check with the Sangamon County Jail to see what the records show. Because they keep a record of everybody who's been in jail. Exactly. And as I pointed out in my response to the State's motion, our argument is based on the record. The State wants to make an argument outside the record, so it's actually their burden to present those documents. I did get additional documents from the jail that were basically the same of documents that the State, the booking report. It was just a different booking report. So, I mean, I'm not going, you know, the State, if they want to prove something that's not in the record and can obtain verifiable documents, they can ask you to take judicial notice of that. This is a simple issue. Your client knows whether or not he was in jail, and you should have asked him. If he told you he was in there for 60 days and didn't get the credit, that's one thing. If he told you he wasn't, that's another thing, and we shouldn't be discussing this issue. I don't think we would be if that were the case. We'll see, I guess. Well, I've talked to him. I mean, what he told me is supported by the record, which is why I'm raising the argument. I'm not here to waste anybody's time. If I didn't believe he was in custody, I wouldn't raise the issue. So just a few points briefly about the reasonable doubt argument. If the State proved that Mr. Romero was not credible at trial, that is not sufficient to prove the offense beyond reasonable doubt. They must present independent evidence of intoxicated driving, and they just simply failed to link intoxication and driving in this case. And in response to Your Honor's question about why it's important to follow cases like Flores, it's important because his alleged admission here is the only evidence. And this isn't a case where a lot of times prosecutors will say, if you go to sleep and it's not snowing and you wake up and there's snow on the ground, you can infer it snowed overnight. But this situation is really more like you look out the window, it's not snowing, two days later you look out the window again and it's snow. Can you infer it snowed last night? Well, of course not. We don't know because we're missing relevant facts, and the relevant facts here, it was the State's job to present them, and they didn't present any evidence of what happened during this 30 minutes or so where nobody was observing Mr. Meredith and he claims to be drinking at the retention pond. So I would just ask Your Honors to reverse Mr. Meredith's conviction outright because the State simply failed to meet its burden here. Alternatively, I'd ask you to remand for a new trial based on the prosecutorial comments that diminish the State's burden of proof. Thank you very much, Your Honors.